## JOSEPH H. FISK *vs.* NEW ENGLAND TIRE AND SUPPLY COMPANY.

Suffolk.     January 15, 1923. — March 3, 1923.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Evidence,* Competency, Relevancy and materiality. *Corporation,* What constitutes
corporate action, Officers and agents. *Contract,* What constitutes, Validity.
*Practice, Civil,* Requests, rulings and instructions, Judge's charge.

In an action of contract against a Massachusetts merchandising corporation for
services as general manager from April 1 to November 30, 1918, the plaintiff
contended that the defendant had agreed to pay him for a year's services one
half of the net profits realized by the defendant. It appeared that the defendant
was incorporated in 1914. Its only stockholders were the president, his daughter,
who was treasurer, the plaintiff and the plaintiff's wife, who was clerk. These
four constituted the board of directors with full general powers to manage the
affairs of the company, which included the making of contracts, the employment
of agents, and the establishment of their compensation, the president being
given by vote of the board full power to employ and fix the compensation of
employees. The plaintiff was chosen general manager. Subject to exceptions
of the defendant there was admitted in evidence an agreement in writing of
March, 1914, by all the stockholders that the net profits should be divided
equally between the plaintiff and the president, the other two stockholders con-
senting to be excluded from participation, the evidence being admitted to ex-
plain a vote of the directors, which was in evidence, confirming the arrangement
and referring to it. Subject to further exceptions by the defendant, evidence was
admitted tending to show that, in the succeeding years, in conversations with the
president, the plaintiff was told that his services were satisfactory and that it
was agreed between them that the arrangement previously made should continue,
such conversations in 1916, 1917 and 1918, occurring at the directors' meetings,
although no formal action to that effect was taken by the directors. *Held,* that
    (1) The exceptions to the admission of evidence must be overruled;
    (2) It was a question of fact for the jury whether the directors, at their board
meetings where the discussions relating to the plaintiff's continuance of em-
ployment and division of net profits took place, acquiesced in the arrangement
in evidence, even if no formal vote to that effect was passed and recorded.
    At the trial of the action above described, there was further evidence tending
to show that an amount also was voted annually to the plaintiff "as a drawing
account as a clerk working for the company." In April, 1915, the directors
voted a division in accordance with the agreement of March, 1914, providing
that neither the plaintiff nor the president should "be paid any cash on account
of said dividend except by a unanimous vote of the board of directors." On
November 6, 1918, the board, knowing that the plaintiff was going into the army,
voted to accept his resignation to become effective November 30, empowered
the president to hire a new manager, and voted to approve the previous distri-

butions of net profits. In April, 1919, the board, after a discussion, evidence of which was admitted subject to an exception by the defendant, arranged for the division of profits as before and voted to pay the plaintiff for salary as general manager a certain amount therein stated, "up to and including November 30, 1918, he resigning effective that date to enter the U. S. Army," and, at the suggestion of the defendant's counsel, who was present, the president gave the plaintiff his note for an amount sufficient to make the amount paid equal to the fifty per cent which was the basis of the former distributions. Afterwards, the salary not being paid, this action was brought without a demand. There also was evidence that the plaintiff's duties were well performed and his general management of the company's affairs was satisfactory to the stockholders till the time of his resignation. *Held,* that

(3) The evidence warranted a finding that the plaintiff, whose employment on a salary while he was a director had been with the full knowledge and assent of all the stockholders, had fully performed the contract for which payment had been voted;

(4) The vote of April, 1919, was a direct recognition and statement of the defendant's liability, and its contention that his resignation which had been accepted operated as a cancellation of the defendant's indebtedness could not be sustained;

(5) The contract in the circumstances was terminated by mutual consent after substantial performance by the plaintiff of which the defendant had the benefit, and the action was not prematurely brought;

(6) No demand was necessary before the bringing of the action;

(7) A verdict for the plaintiff was warranted;

(8) A ruling asked for by the defendant, that the plaintiff could not recover because he voluntarily gave up his employment on November 6, 1918, could not be given.

CONTRACT for services alleged to have been rendered as general manager of the defendant, a corporation dealing in automobile tubes, tires and accessories in Boston, during the fiscal year beginning April 1, 1918. Writ dated May 19, 1919.

The original declaration contained a single count. Later it was amended three times, an additional count being added each time. The second count was upon an account annexed for $7,000 for "services as general manager of the defendant company from March 31, 1918, to November 30, 1918." The third and fourth counts were as follows:

"Count 3. On or about March 9, 1914, the plaintiff entered into an agreement with the defendant whereby the plaintiff was to serve as general manager of the defendant for the fiscal year ending March 31, 1915, and was to receive one half the net profits of the defendant for the said fiscal year. The plaintiff served as general manager of the defendant for the said fiscal year and was paid one half the net profits of the defendant. The said agreement

was thereafter renewed from year to year, and the plaintiff duly served as general manager of the defendant, and was paid one half the net profits for each of the fiscal years ending March 31, 1916, March 31, 1917, and March 31, 1918. The said agreement was thereafter renewed for the fiscal year ending March 31, 1919, and the plaintiff duly served the defendant as general manager until his resignation was accepted by the defendant effective November 30, 1918, in order to enable the plaintiff to enter the United States Army, and the plaintiff has performed his part of the said contract in all respects. The defendant, however, has refused, and still refuses, to pay the plaintiff one half the net profits of the period from March 31, 1918, to November 30, 1918, or any part thereof, all to the damage of the plaintiff, as in his writ alleged.

"Count 4. The plaintiff entered into an agreement with the defendant whereby the plaintiff was to serve as general manager of the defendant beginning April 1, 1918, and was to receive therefor thirty-five dollars a week and in addition one half the net profits of the defendant while so employed. The plaintiff served as general manager of the defendant and performed the said agreement in all respects from April 1, 1918, until his resignation was accepted by the defendant effective November 30, 1918, in order to enable the plaintiff to enter the United States Army. The plaintiff received the said weekly payments of thirty-five dollars while so employed, and the defendant made large profits while the plaintiff was so employed, but the defendant has refused, and still refuses, to pay the plaintiff one half the said net profits of the defendant, or any part thereof, all to the damage of the plaintiff, as in his writ alleged."

The action was tried in the Superior Court before *Fosdick,* J.

Referring to a part of the record of the meeting of the directors of the defendant of April 14, 1915, described in the opinion, which stated that Carrie L. Keefe and Agnes J. Fisk were "Not entitled to dividends by agreement," the plaintiff, subject to exceptions by the defendant, was permitted to testify that the "agreement" thus referred to was an agreement in writing made on March 9, 1914, between the four persons named in the opinion, who comprised the directors and "all the stockholders of the New England Tire and Supply Company," and who thereby agreed "that at the end

of the fiscal year of the above corporation, to wit, March 31, 1915, the net profits, if any, are to be declared on the outstanding stock of the corporation, are to be paid to the President John T. Keefe personally and to the General Manager Joseph H. Fisk personally in equal shares, (50% and 50% of such profits,) and that the other two stockholders, Carrie L. Keefe and Agnes J. Fisk agree that they are not to be paid any net profits on the stock standing in their name, on March 31, 1915."

Referring to the vote at the directors' meeting of April 14, 1915, the plaintiff, subject to exceptions by the defendant, was permitted to testify that, with reference to the division of the net profits of the defendant company between him and John T. Keefe, Keefe had said to him, "Joe, I am well pleased with what you have done the past year and if it is agreeable to you I will continue, — you and I can continue along the same lines, split the profits fifty-fifty" and that he had replied, "Mr. Keefe, that is agreeable to me, I will continue working for the corporation on those same lines."

Subject to exceptions by the defendant, the plaintiff also was permitted to testify, as to further talk at the directors' meeting of April 12, 1916, that Keefe said to him, "Joe, I am pleased with the work you done last year. If it is agreeable to you we will continue along in the same line, dividing up the profits fifty-fifty" and that he replied, "It is agreeable to me and I will go to work and work for the company this next year the same way."

Subject to further exceptions by the defendant, the plaintiff testified as to a conversation in 1917, at a directors' meeting at which all the directors were present, relative to dividing the profits, that Keefe said "Joe, I am pleased with what you have done the past year, and I will continue along, be satisfied to continue along the same way for the next year" and that he replied that he "was satisfied." This talk, he testified, "was just between Mr. Keefe and myself."

Subject to further exceptions by the defendant, the plaintiff then testified that at the directors' meeting in 1918, there was a later conversation, in which Keefe said to him that he was satisfied with the work he had been doing and, if it was agreeable to him he "would continue on, going fifty-fifty on the profits, so long as I worked there; I said that was agreeable and I continued to work;"

that the inequality between the amount to be paid to him and that to be paid to Keefe because of the dividend of $2,919.46 in 1918 according to the shares held, was discussed at the directors' meeting in that year; "that this amount of money, $2,919.46, was to be divided as per shares, and that I held the smallest number of shares, and would n't really get half the amount. Mr. Keefe said he would take this amount which was on the journal and pay me back by a personal check from him enough money to equalize it up so that I would eventually get the same amount of money that he got."

A vote of the directors of the defendant on April 14, 1919, was in evidence, "that the following salaries be paid, on the same basis as previous years, for the fiscal year ending March 31, 1919: To John T. Keefe, President, $6,000; to Carrie L. Keefe, Treasurer, $3,500; to Joseph H. Fisk, General Manager, up to and including Nov. 30, 1918, he resigning effective that date to enter the U. S. Army, $6,333.33, said amounts to be credited to the 'special' account of each officer on the books of the company as an account payable." Subject to an exception by the defendant, the plaintiff was permitted to testify as to the following "discussion" at that meeting, the judge confining the testimony "wholly to such discussion as concerned the manner of arriving at figures:" "Well, the discussion was between Mr. Keefe and myself as usual, also with the counsel of the company, Mr. Lannon. I said 'How are we going to arrive at the amount to be voted to me? How are we going to get the exact amount of money? How are you going to arrive at that?' and Mr. Lannon said, 'Well, we took the inventory of November 30, and we will take one half of that, and then for the period of the last part of this year that you have been away, we will just give you one fourth of the profits of that period. Of course, we know what that amount is, because we have got the figures, he says, to give this man Taylor ten per cent of it, and, he says that we will add in that total amount, and that will give us the exact figures that are due you, but on the vote, as we are showing it as a salary we will just show on the vote that there is a salary coming to you for two-thirds of the year, based on a salary of ninety-five hundred a year, and the addition we will make up. We will also give you one quarter of the profits. Them two amounts, of course, will not total, nor anywhere equal the amount.

that is really coming to you, but to make up that difference Mr. Keefe will give you a personal note.' Mr. Keefe spoke up and said that that was what he would do, and it was agreeable to him to make me out a personal note, as that shows." Subject to the defendant's exception, the plaintiff was permitted to introduce the following instrument, stating that it was the personal note to which he had just referred: "April 14, 1919. I hereby for value received agree to pay to Joseph H. Fisk the sum of One Thousand Four hundred ninety one dollars and twenty one cents ($1491.21) at the time that I receive from the New England Tire & Supply Company the sum of Six thousand dollars ($6000) passed to my credit by said Company plus the Three thousand five hundred dollars ($3500) passed to the credit of Carrie L. Keefe by the Company on or after March 31, 1919 in accordance with vote of directors of said Company on April 14, 1919, or pro rata as I receive pro rata parts thereof. [Signed]   John T. Keefe." This instrument was "admitted with this statement to the jury by way of instruction that the giving of this note cannot be said to be an act of the company in any way or to bind the company."

Other material evidence is described in the opinion.

At the close of the evidence, the defendant moved that verdicts be ordered in its favor on each count of the declaration, and asked, among others, for the following rulings:

"4. If the plaintiff did not disclose to the defendant or its officers the fact that he did not intend to continue in its employ after April, 1919, and did not disclose his intentions to open a competitive business, or if he kept silent, knowing that the defendant and its officers believed that he would continue in its employ as in other years during 1919, and if the vote or agreement to pay him money was made under these circumstances when it would not have been made if full disclosure of the plaintiff's intentions had been made, any admissions contained in said vote or agreement are not binding on the defendant.

"5. That it was a fraud by the plaintiff on the defendant to allow the defendant to vote or promise payments of money to the plaintiff on the belief that the plaintiff would continue in its employ as in previous years when the plaintiff knew that the defendant believed this to be the fact, and voted or promised the money relying on said belief, and the plaintiff permitted this to

be done without disclosing the fact that he would not continue in the defendant's employ; that the plaintiff cannot take advantage of his fraud and non-disclosure, and any admissions contained in said votes or agreements are not binding on the defendant.

"6. That if the jury finds that the defendant passed the vote of April 14, 1919, to pay the plaintiff the sums set forth in the declaration, with the understanding on its part that the plaintiff was to continue in its employ for the year 1919, and the plaintiff did nothing to change this understanding, then as the plaintiff did not continue in its employ for the year 1919, the defendant is not bound by any admissions contained in said vote.

"7. That the plaintiff was bound to make a full and complete disclosure to the defendant of all facts within his knowledge which concerned the company and its dealings with him."

"14. That under all the circumstances in this case, it was necessary that the plaintiff make a demand on the defendant for the payment of the sums alleged to be due him in his declaration before bringing his action for the same, and as he made no demand before he started his action, he cannot recover.

"15. That as the plaintiff was a stockholder, director, and officer of the defendant company, and took part in the meeting of April 14, 1919, and in the votes taken at said meeting, upon which votes his action is based, any agreement voted or money promised at said meeting was voidable at the election of the defendant."

"23. That the plaintiff cannot recover on the third count of his declaration as he voluntarily gave up his employment on or about November 6, 1918, before the expiration of the contract period."

The motions were denied and the rulings were refused.

During the trial of the action the plaintiff waived his first count in open court, and the action was submitted to the jury on the second, third and fourth counts of his declaration as amended.

Exceptions by the defendant to certain portions of the charge to the jury are described in the opinion.

The jury found for the plaintiff in the sum of $8,065.04; and the defendant alleged exceptions.

*C. H. Cronin,* for the defendant.

*R. S. Wilkins,* (*L. Curtis, 2d,* with him,) for the plaintiff.

BRALEY, J.  It is contended by the defendant that there was no evidence of any contract between the parties to pay the plaintiff for services as manager or one half of the net profits.  The defendant is a domestic corporation with a capital stock of forty shares, of the par value of $50 each which had been fully paid, and was held during the period covered by the litigation by John T. Keefe twenty-five shares, his daughter Carrie L. Keefe five shares, the plaintiff nine shares, and his wife Agnes J. Fisk one share.  The fiscal year began April 1 and ended on March 31 of the following year.  The officers and stockholders from the time of incorporation in March, 1914, to May, 1919, were John T. Keefe, president, Carrie L. Keefe, treasurer, Agnes J. Fisk, clerk, and the president, the treasurer, the clerk and the plaintiff comprised the board of directors, who under the by-laws of the corporation had full general powers to manage the affairs of the company, which included the making of contracts, the employment of agents, and the establishment of their compensation.  And March 16, 1914, the board voted "that the president be and hereby is authorized to employ and remove and fix the compensation and duties of all officers, agents, and clerks, and servants of the corporation not inconsistent" with the by-laws.  The plaintiff by vote of the directors was chosen as general manager at their first meeting held March 2, 1914, and the jury on the record could find his duties were well performed and his general management of the company's affairs was satisfactory to the stockholders, who on March 9, 1914, executed an agreement which provided that the net profits for the fiscal year ending March 31, 1915, should be divided, fifty per cent to John T. Keefe and fifty per cent to the plaintiff, while the other two stockholders by their express consent in writing were excluded from participation.  The directors voted April 14, 1915, that a division be made in accordance with the agreement by "placing to the credit of each, one-half the net profits of the company . . . subject however, pro rata to any debts occasioned to the business by losses on account of bad bills, depreciations or otherwise not now appearing as such, and subject to the further stipulation that said John T. Keefe and Joseph H. Fisk are not to be paid any cash on account of said dividends except by a unanimous vote of the Board of Directors. . . ."  While there was no agreement in writing for the succeeding

years, yet the evidence, which was admissible shows, and the jury could determine that at the beginning of each succeeding year down to 1918, although the surplus showed a constant increase, there was a mutual understanding that the plaintiff was to continue as general manager, and the surplus was to be divided equally between the plaintiff and the president. It was a question of fact under suitable instructions, which were given, whether the directors at their board meetings where all the discussions relating to the plaintiff's continuance of employment and division of net profits took place, acquiesced in the arrangement stated in evidence by the plaintiff, even if no formal vote to that effect was passed and recorded. *Murray* v. *C. N. Nelson Lumber Co.* 143 Mass. 250, 251. *Beacon Trust Co.* v. *Souther,* 183 Mass. 413, 417. When the fiscal year ended March 31, 1918, the board held a meeting April 10, 1918, at which all the directors and stockholders were present. It was voted that $9,500 should be paid to the plaintiff as salary and that a dividend of net profits be declared "on a share basis," the amount to be credited on the company's books, and the president gave to the plaintiff his personal check to equalize as between them the excess, so that the amounts received by the plaintiff and Keefe for that year were the same. It also is shown that at this meeting the president stated without any dissent being expressed, that he was satisfied with the plaintiff's performance of his duties, and that the division of profits would be continued as long as the plaintiff remained. The plaintiff had previously received "$25 a week as a drawing account as a clerk working for the company," and it was voted at this meeting that the amount be increased to "$35 a week." The plaintiff testified without objection, "that the directors knew that he was going into the army before November 6, 1918, and that none of them made any objections." It was on this date that the board held a special meeting attended by all the members. The board voted to accept the plaintiff's resignation as manager to become effective November 30, 1918, empowered the president to hire a new manager, settle the terms of his employment, and that an inventory of stock be taken as of that date "to determine the net profits." They also voted to approve the distribution of all net profits from April 1, 1915, to April 1, 1917, and their action was confirmed in writing by all the stockholders. The fiscal year of

1918 having closed the full board held a meeting in April, 1919, which was also attended by counsel for the company. The question of the plaintiff's salary, and the division of net profits was debated and fully considered. It was competent for the plaintiff to testify, that after this discussion counsel for the company said, "Now we will put that amount one side that is due you, and we will vote or have the directors vote a salary to you and use as a basis of figuring on this salary your salary for the previous year which was $9,500 and as you worked two thirds of the year we will of course take two thirds of $9,500 and then vote that to you as a salary and then we will just vote to you the regular amount that is coming to you as a stockholder and, of course those two amounts will be much less than what really belongs to you," "but to make up that difference Mr. Keefe will give you a personal note." The board thereupon voted to pay the plaintiff for salary as general manager "up to and including November 30, 1918, . . . $6,633.33," and to declare a dividend from net profits to the shareholders of record for the same period, and Keefe at the request of the company's counsel gave the plaintiff his note for an amount sufficient to equal fifty per cent which was the basis of the former distributions. The evidence warranted a finding that the plaintiff whose employment on a salary while he was a director had been with the full knowledge and assent of all the stockholders had fully performed the contract for which payment had been voted. *Foster* v. *C. G. Howes Co.* 230 Mass. 43. The vote itself is a direct recognition and statement of the defendant's liability, and the argument that his resignation which had been accepted operated as a cancellation of the defendant's indebtedness cannot be sustained. The contract under the circumstances was terminated by mutual consent after substantial performance by the plaintiff of which the defendant had the benefit, and the action was not prematurely brought. Nor was any demand necessary before bringing suit. A general verdict for the defendant could not have been ordered and the first motion and the fourteenth request were denied rightly. *Fitzgerald* v. *Allen,* 128 Mass. 232, 234. *Rogers* v. *Steele,* 24 Vt. 513. *Lamburn* v. *Cruden,* 2 Man. & Gr. 253. The defendant's twenty-third request could not have been given. It could not be ruled as matter of law that the plaintiff voluntarily gave up his employment on

the understanding that he waived all claim for services rendered. The fourth, fifth, sixth, seventh and fifteenth requests in so far as appropriate are sufficiently covered by the instructions. It is argued that the plaintiff cannot recover under the second count because the weekly payments must be treated as full compensation for his services as general manager, and the jury should have been so instructed. There was abundant evidence however that the salary voted for the period in issue was independent of the "drawing account." It was a question of fact, even if no express contract was found, whether the services were of benefit to the defendant and were accepted under such circumstances that the president and directors must reasonably have understood that they were not gratuitous. *Apsey* v. *Chattel Loan Co.* 216 Mass. 364, 366. *Hooker* v. *Eagle Bank of Rochester*, 30 N. Y. 83. A verdict could not have been directed on the third and fourth counts. The evidence warranted the jury in finding that under the votes of the directors, and the ratification of their doings by all the stockholders, and the entries on the books of account of the corporation, the arrangement with the plaintiff as to salary as well as division of profits was with the knowledge and assent of the company. It was therefore bound. *Beacon Trust Co.* v. *Souther*, 183 Mass. 413, 417. We have examined all the exceptions to the admission of evidence not previously referred to, and in so far as argued no prejudicial error is shown. The defendant also excepted to certain portions of the instructions. The instructions concerning the plaintiff's resignation and its effect, as well as the instructions relating to the contractual relations of the parties on all the evidence were appropriate and unexceptionable. It is also urged that the judge assumed, and told the jury to assume, that the defendant admitted the existence of a contract, but claimed that its terms called for payment in the future, while the defendant's real contention was that no contract ever existed. The instructions are to be read as a whole. *Conners Brothers Co.* v. *Sullivan*, 220 Mass. 600. The defendant on the record contended that even if there were a contract the money was payable only when the assets appropriated had been converted into money. The judge at the opening and throughout his instructions told the jury that the first question to be decided was whether the plaintiff had satisfied them that there was an enforceable contract. It was

proper for him to state the respective contentions of the parties, and in so doing he did not depart from the evidence. It was not a binding instruction that a contract actually existed as the defendant now claims. The judge immediately said, "Now it is for you to say what the terms of that contract were, . . . if there was a contract."

*Exceptions overruled.*