JOHN H. KAVANAGH *vs.* RUDOLPH R. ELLINGSON & another (and a companion case [1]).

Middlesex.     February 3, 1947. — March 4, 1947.

Present: FIELD, C.J., QUA, RONAN, WILKINS, & SPALDING, JJ.

*Contract*, Of employment, To share profits. *Equity Jurisdiction*, Accounting. *Equity Pleading and Practice*, Waiver.

Want of equity, upon which a demurrer to a bill in equity for an accounting was grounded, was waived by the defendant where, after overruling of the demurrer, he set up in a counterclaim by amendment to his answer, and fully litigated, a claim against the plaintiff for certain alleged overpayments in connection with the subject matter of the bill.

In proceedings between the proprietor of a business and an employee respecting the proper determination of a certain share of the profits of the business to which, under an oral contract of employment, the employee was entitled beyond a fixed salary, evidence warranted conclusions of fact that under the contract the employee, having resigned his employment during a certain calendar year, was nevertheless entitled to share the profits in that year up to the time of his resignation; and that in computing profits there should not be deducted from gross receipts so much of sums segregated by the proprietor in the form of "salary" to himself in various years as was in excess of the amount so segregated at the time of the making of the contract notwithstanding the facts that his services were worth the increased "salary" and that the employee's stated salary had been increased in the meantime, nor premiums paid by the proprietor on life insurance maintained by him as security for a note given by him in part payment when he purchased the business, nor payments made by the proprietor on his personal income tax arising from the business.

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated March 13, 1944. Also, an action of

CONTRACT. Writ in the Superior Court dated February 29, 1944.

The suit and the action were heard together by *O'Connell*, J.

---

[1] The companion case is by Ellingson, a defendant in the first case, against the plaintiff in the first case.

*C. B. Rugg*, (*J. J. Phelan, Jr.*, with him,) for Ellingson.
*H. W. Keyes*, for Kavanagh.

WILKINS, J.    These two cases, a bill in equity and an
action of contract, were tried together.    In the suit in equity
Kavanagh, formerly sales manager, seeks an accounting
from Ellingson and McAdams of a share of the profits of an
unincorporated business, called the Golden Cookie Com-
pany, during the years 1940 to 1943, inclusive.    Kavanagh
became sales manager under an oral agreement with Elling-
son, who, on the findings of the judge, must be taken to
have been the sole owner of the business, and not the partner
of Kavanagh, or of McAdams, who was the production
manager.    A final decree was entered dismissing the bill
against McAdams, and ordering Ellingson to pay to
Kavanagh the sum of $5,552.91 with interest.    The "de-
fendants" appealed.    The case is here with report of the
evidence.    In the action at law Ellingson sought to recover
various payments made to Kavanagh in 1943, the judge
found for the defendant, and Ellingson's exceptions relate
to the denial of certain of his requests for rulings.

1. Ellingson's demurrer to the bill for want of equity was
overruled, and he appealed.    We need not consider  this
question, because subsequent to the overruling of the
demurrer, Ellingson was allowed to amend his answer by
setting up a counterclaim for overpayments of profits to the
plaintiff alleged to have been made subject to adjustments
which never were made.    The subject matter of the counter-
claim was the same as that of the action of contract and ap-
pears to have been fully litigated.    His conduct was a
waiver of the objection that there was a plain, adequate, and
complete remedy at law.    *Parkway, Inc.* v. *United States
Fire Ins. Co.* 314 Mass. 647, 651, and cases cited.

2. The only issue concerning the action at law, and the
counterclaim as well, is whether Kavanagh, who resigned
September 8, 1943, was entitled to any share of the profits
after January 1, 1943, on account of which he had been paid
$2,557.83.    We are not sure whether Ellingson now makes
any contention in this respect.    In any event there was no
error.    In the equity case the judge found — and he was not

plainly wrong — that Kavanagh was entitled to a share of the net profits for the period for which he worked in 1943, and the same conclusion is implicit in the finding for the defendant in the law case. The requests for rulings applicable to the law case which were denied were based upon the assumption that Kavanagh was not entitled to compensation for less than a full calendar year. It could not have been so ruled as matter of law. *Fisk* v. *New England Tire & Supply Co.* 244 Mass. 364.

3. The remaining questions are in the suit in equity and concern the amounts upon which Kavanagh's share of the profits should have been computed.

(a) The first is whether Ellingson's own salary was properly deducted in determining the profits. On July 17, 1939, Ellingson, who several years before had purchased the Golden Cookie Company business, and Kavanagh made an oral agreement for the employment of Kavanagh as sales manager with a salary of $100 weekly plus ten per cent of the profits. At that time Ellingson was drawing $100 weekly. In 1939 there were no profits, but there were profits in each subsequent year. Without making disclosure to Kavanagh Ellingson increased his own salary to $7,000 in 1940, to $9,000 in 1941, to $11,000 in 1942, and to $15,000 in 1943. These figures were deducted in computing the share of the profits paid to Kavanagh, who concedes that Ellingson was entitled to deduct $100 weekly for his own salary, but no more. The judge found that "Kavanagh was warranted in believing that Ellingson was drawing not more than $5,200 annually, and that such sums in excess of $5,200 as were segregated by Ellingson in the form of salary to himself should have been included as earnings upon which profits would be based." This finding was not plainly wrong. There was a question of fact as to what was the oral contract the parties made. That Kavanagh's salary was raised to $150 weekly about December 1, 1941, is not decisive. Nor is the result affected by the finding in substance to the effect that Ellingson's services to the business were worth the amounts he allotted to himself as salary.

(b) The judge ruled that certain payments of premiums for insurance on the life of Ellingson were wrongly deducted in computing profits. In the absence of findings by the judge we ourselves find the material facts. *Lowell Bar Association v. Loeb,* 315 Mass. 176, 178. Ellingson had purchased certain property and the right to acquire the business from three individuals named Greer, and part of the consideration was a promissory note. Later a written agreement was entered into between the Greers and Ellingson, which recited the giving at that time of a new promissory note for $29,533.17 for the balance payable with interest in monthly instalments of $340 each, and contained provisions that Ellingson should carry policies of insurance on his own life to an amount at least equal to the balance due on the note, and that the policies should be payable to the Greers or to a trustee for them. There was at first one policy and later a second policy, the premium on each being about $750 annually. Kavanagh conceded at the hearing that "he knew about the policy," but the time and manner of the acquisition of his knowledge did not appear. Ellingson did not tell him. The profit and loss statement of December 31, 1940, which was the only one which Kavanagh saw, showed no insurance premiums as a separate item. We do not, however, regard the extent of Kavanagh's knowledge as important where it falls short of assent that the premiums should be deducted in determining profits. The purpose of the insurance was to make reasonably certain that Ellingson would carry out his personal undertaking to pay the purchase price of the business. If Ellingson were to die before he had paid the Greers, the proceeds of the insurance would first go to discharge that undertaking and would thereby create for his estate a complete ownership of the business free and clear of the loan. Any excess of the proceeds over the balance of the note would become assets of his estate. If Ellingson were to pay off the note in his lifetime, the policy would belong entirely to him and its cash surrender value would be attributable to earnings of the business. In any event, the capital assets of Ellingson would be enhanced. The judge rightly ruled that the payments of

insurance premiums were not deductible in computing the amounts to which Kavanagh was entitled.

(c) The judge ruled that Ellingson's own income tax payments should not have been deducted. This ruling also was right. They were personal obligations of Ellingson arising out of the fact that there had been profits, and were not an expense of his doing business as an individual. There was nothing about the profit and loss statement for 1940 which charged Kavanagh with knowledge that such payments were taken out in computing the profits for the purposes of his contract, nor was there anything which showed that he ever agreed with Ellingson that his share of the profits should thus be reduced. Indeed such conversation as there was tended to the contrary. Ellingson told Kavanagh that "there was no company tax paid; he filed a return for the company in his own income."

4. The result is that in the equity suit the interlocutory decree is affirmed and the final decree is affirmed with costs, and in the law action the exceptions are overruled.

*So ordered.*