GEORGE ROBERTS *vs.* EASTLAND FOOD PRODUCTS CO., INC. & others.

Bristol.   October 25, 1948. — December 7, 1948.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Contract,* Construction, To share profits, Of employment. *Equity Jurisdiction,* Accounting. *Profits.*

In an accounting of profits pursuant to a contract whereby a corporation agreed to pay its employee a stated percentage of the profits of its business, a provision of the contract, that the "best judgment" of the president of the corporation, exercised in good faith, should determine "what expenses are to be made before the net profit is arrived at," did not require that rent paid in advance by the corporation during the accounting period for a subsequent period and the value of supplies purchased by it during the accounting period and left on hand at the end thereof be treated as current expenses of the accounting period to be deducted in computing profits, nor preclude the advance payment of rent and the value of the supplies being treated as assets of the corporation in the computation; but such provision of the contract did make final a decision of the president approving in good faith and in the exercise of his best judgment certain travelling expenses of an official of the corporation paid during the accounting period, and required that such expenses be deducted in the computation of profits.

Facts found by a master showed that a contract between a corporation and its employee, whereby it was to pay him a stated percentage of the profits of its business, computed annually, was not terminated by the parties until a certain date in August and that the employee was entitled to such share of the profits for the full period from the previous January 1 to that date, although through injury he had been unable to perform his duties for a part of that period.

BILL IN EQUITY, filed in the Superior Court on May 27, 1947.

The suit was heard on a master's report by *Swift,* J.

*S. Rosenberg,* (*J. F. Francis* with him,) for the defendants.

*H. Traverse,* for the plaintiff.

RONAN, J. The plaintiff, who had many years, experience in processing and canning fish in various countries in Europe, came to America in 1940 where, in search of employment, he met the defendant Waley, who since 1906 had been identified with the fish canning industry in which he had become a successful producer having an active and large interest in several fish processing companies. The plaintiff claimed to have over one hundred secret formulas for processing fish. Waley caused the defendant Eastland Food Products Co. Inc. to be organized in October, 1941, selected and equipped a factory for the processing and canning of fish, and with the plaintiff and the defendant Orr began the corporate business which has since been successfully continued. Waley has always owned all the capital stock of the Eastland Food Products Co. Inc., hereinafter called the corporation. He became its president and a director. The plaintiff was the treasurer and a director, and Orr its vice president and a director. The corporation entered into a written contract of employment with the plaintiff, which was dated August 13, 1942, but was made retroactive to January 1, 1942. The plaintiff in the present suit seeks an accounting of the profits claimed to be due him under this contract for the period from January 1, 1942, to August 31, 1946, when he alleges he severed his employment with the corporation. The suit was referred to a master whose report has been confirmed. There were entered a final decree dismissing the bill against all defendants except the corporation, and a second decree ordering the corporation to pay a certain sum to the plaintiff.

The written contract provided for the employment of the plaintiff for the period ending one year after the signing of an armistice between the United States and her then enemies at weekly wages of $25 plus twelve and one half per cent of the net profits before the deduction of the Federal income tax. The profits for each year were to be computed separately from the profits of every other year. The plaintiff was receiving $50 a week when the contract was executed, and it was stipulated that he would be paid at this rate so long as the corporation continued to earn a monthly net

profit of not less than $2,000. The agreement further provided that Waley should receive $50 a week and $50 for expenses and Orr should receive $75 a week plus actual expenses, and "that these figures are to be maintained irrespective of whether you are receiving $25 or $50 per week and the decision as to this is agreed to rest exclusively with the president of the company." The fifth paragraph of the agreement reads as follows: "It is furthermore agreed and understood that in the operation of the company and in deciding what expenses are to be made before the net profit is arrived at 1 [*sic*], what price our merchandise is to be sold, are all matters in which the judgment of the president of the company is final, but it is understood he shall use his best judgment and good faith in arriving at a determination of these matters."

The corporation now objects to the allowance of four items in the accounting by which the corporation was charged with $55.25, $125, $495.94 and $2,327.62 respectively. The corporation in 1945 paid to the lessor of its factory premises $442 to be applied to the rent account after January 1, 1947. The corporation had on hand at the end of the previous accounting period $1,000 worth of supplies out of the total expended for supplies in that year. The difference between the travelling expenses of Orr amounting to $6,592.49, as shown by the books of the corporation, and $2,625, the fair and reasonable amount of those expenses as computed by the master, is $3,967.49. He found as the corporation contended that Orr had travelled thirty-five thousand miles on the corporation's business and reckoned that seven and one half cents a mile would be reasonable and that this amount included meals, hotel accommodations and all other incidental expenses. The master credited the plaintiff with twelve and one half per cent of the total rental advance or $55.25, the value of the supplies on hand or $125, and the difference in the travelling expenses of Orr or $495.94. The master found that the rental advance should have been included in the profits but was charged to expenses through error or inadvertence and by good accounting practice should have been set up in the reserve, and that

the item on supplies was charged off as an expense in accordance with Waley's instructions; but he stated that he did not agree with Waley's allocation of the item and that he did not agree with Waley's approval of the amount of Orr's travelling expenses as they appeared upon the books and approved by Waley because, although these expenses were paid to Orr in weekly payments of $65, the evidence did not disclose a single memorandum or item identifying any payment with any particular expense. All the three items now in question appeared upon the books as expenses of the corporation, and all of them were so regarded and approved by Waley who the master found "at all times acted in good faith and in the best judgment of which he was capable, (which I find to be good judgment) in the interests of the corporation."

The corporation's contention that the determination by Waley that these items were properly chargeable as expenses and consequently were deductible in the computation of profits was final as provided in the fifth paragraph of the written contract of August 13, 1942, would have to be sustained if that was the proper interpretation of the contract. *Clark* v. *New England Telephone & Telegraph Co.* 229 Mass. 1, 7. *Charlton* v. *Library Bureau*, 260 Mass. 1, 6–7. The contract simply provided that, in conducting the business, Waley was authorized to decide what expenses should be incurred before the profits were computed and the prices at which the corporation should sell its products. It was merely the necessity and advisability for the occurrence of an expense including the amount thereof that he was to determine. The contract gave him the right to approve the advance payment of rent and the payment for supplies, but the contract gave him no right to decide that payment of this rent and the supplies on hand were not assets of the corporation. The plaintiff received no benefit from the payment of rent for a period subsequent to the accounting period nor from the value of the supplies on hand. The master was right in crediting the plaintiff with the amounts stated in his report. Deferred charges and the value of current assets were not to be ignored in computing the profit. *Thurston* v. *Hamblin*, 199 Mass. 151, 158. *Stein* v. *Strath-*

*more Worsted Mills*, 221 Mass. 86, 89. *Daly* v. *Chapman Manuf. Co.* 246 Mass. 118, 125. *Stewart* v. *John R. Lankenau Co.* 259 Mass. 242, 252–253. Fletcher, Cyclopedia of the Law of Private Corporations (Per. ed.) § 9260.

The corporation paid Orr's travelling expenses amounting to $6,592.49 and, these expenses having been approved by Waley acting in good faith and in the exercise of his best judgment in accordance with the contract, his decision was final. Furthermore, the contract recited that Orr was receiving a salary of $75 a week plus actual expenses, and that these payments to be made to Orr rested exclusively with the president of the corporation. The master could not substitute his judgment for that of Waley. There was error in crediting the plaintiff with $495.94.

The corporation contends that the plaintiff, having left his employment in May, 1946, was not entitled to any profits from January 1, 1946, to August 31, 1946, when it is alleged his contract was terminated. The plaintiff had been injured in an automobile accident and was unable to perform his duties for the corporation. Waley wrote him on August 12, 1946, that "It is quite all right for you to make no further visits to the Eastland as it will not affect either your salary or your share of the profits, if any." The plaintiff resigned as treasurer and director of the corporation, and his resignation was accepted by the corporation's board of directors on May 28, 1946. The plaintiff's contract of employment did not provide that the plaintiff should act as treasurer or director, and his retirement from these offices did not affect his contract. The corporation paid him his weekly wages in accordance with the contract until about August 1, 1946, and recognized the existence of the contract although the board of directors subsequent to May 28, 1946, never took any formal action with reference to the contract or these payments. The master states that it was agreed that five weeks' wages amounting to $250 for the period ending August 31, 1946, were due to the plaintiff subject to certain set-offs. At the hearing before the master the corporation set forth in itemized form the manner in which the profits should be computed, in which the following ap-

peared: "Due plaintiff for five (5) weeks' wages to August 31, 1946, $250." The corporation never contended that the plaintiff was paid these wages. It did not object to the master charging it with them and does not now contend that they were not properly credited to the plaintiff. Moreover, it was bound by the admissions of its counsel that the plaintiff was entitled to these wages. *Graustein* v. *H. P. Hood & Sons, Inc.* 293 Mass. 207. *Brocklesby* v. *Newton,* 294 Mass. 41, 42, 43. *Clifford Shoe Co.* v. *United Shoe Machinery Corp.* 297 Mass. 94. The inference to be drawn from the master's report is that the contract did not terminate until August 31, 1946, and there was no error in computing the profits for the entire period from January 1, 1946, to this last mentioned date. *Fisk* v. *New England Tire & Supply Co.* 244 Mass. 364. *Kavanagh* v. *Ellingson,* 321 Mass. 122, 124. The plaintiff properly was credited with $2,327.62.

There is nothing in the plaintiff's contention that all of the travelling expenses of Orr should have been disallowed. It is plain from what has already been said that these expenses, which were paid by the corporation and approved by Waley, were properly deducted in computing the profits. We know of no reason why the salaries paid to Waley and Orr should not have been credited to the corporation. One Yaezer, who was employed as a salesman by the corporation, was paid a salary of $13,900 during a period of one hundred thirty-nine weeks. The contentions that Yaezer was a fictitious person and that the payroll in this respect was padded cannot be supported in view of the summary of the evidence reported by the master and upon which he found that Yaezer was hired by Waley and paid for services as a salesman in the New York marketing district. The gist of the plaintiff's complaint is that the master should not have believed the witnesses called by the corporation, but that presents no question of law.

The final decree was entered on the same day in two parts which we treat as constituting a single decree. The final decree is to be modified by ordering the corporation to pay the plaintiff the sum of $3,313.78 with interest from the

date of filing of the bill to the date of filing of the master's report and interest upon the sum so computed to the date of the entry of the decree as modified, together with costs to the corporation. *Buckley & Scott Utilities, Inc.* v. *Petroleum Heat & Power Co.* 313 Mass. 498. *Akin* v. *Warner,* 318 Mass. 669. As so modified the final decree is affirmed.

*So ordered.*