HARRY SHER *vs.* MURRAY SANDLER & others.

Suffolk. October 6, 1949. — February 10, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Fraud. Fiduciary. Sale,* Of stock, Rescission. *Corporation,* Stockholder. *Release. Equity Jurisdiction,* Rescission.

The fact that the defendant in a suit in equity, owner of one half of the shares of stock in a corporation, while discussing a proposed sale by the plaintiff to him of the other half of the shares, failed to disclose to the plaintiff information indicating a likelihood of successful termi-

nation of pending negotiations conducted by the defendant with a lessee of corporate property for a new lease which, if executed, would materially enhance the value of the plaintiff's shares and which in fact was executed without the knowledge of the plaintiff shortly after such a sale was made, required a rescission of the sale where it appeared that the corporation had been organized by the parties pursuant to an agreement containing a provision for equal holdings of stock by them and provisions that "each party shall give to the other party full information of all transactions relating to the business of the corporation" and "divulge . . . any information which he may have which may be conducive to the profitable operation of the corporation"; because of such provisions the defendant had a fiduciary's duty of disclosure to the plaintiff and neither the fact that the plaintiff, a keen businessman of more than average experience, was influenced in selling his shares by his own opinion that there was little likelihood that the lease negotiations would end favorably, nor the fact that the defendant made no false representations to him, was material.

A general release of all demands, given by one selling shares in a corporation to another stockholder purchasing them and stated therein to be "intended as being inclusive of any claims arising because of the corporate relations between the two individuals," did not bar a suit by the seller for a rescission of the sale where it appeared that the plaintiff and the defendant had organized the corporation pursuant to an agreement containing provisions that they should be.equal holders of shares and that each would give the other full information of all. transactions relating to its business; and that the plaintiff made the sale and executed the release in conjunction therewith without the defendant's disclosing to him information of a probable favorable termination of negotiations with a third party, conducted by the defendant in behalf of the corporation, which would enhance the value of the plaintiff's shares.

In a suit in equity for rescission of a sale by the plaintiff to the defendant of one half of the shares of a corporation, the other half being held by the defendant, the defendant might properly be ordered to deliver to the plaintiff the defendant's own shares where it appeared that title to the shares purchased from the plaintiff had been acquired by one who was not a party to the suit.

BILL IN EQUITY, filed in the Superior Court on June 25, 1947.

The suit was heard by *O'Connell*, J.

*D. Burstein*, for the plaintiff.

*F. T. Leahy*, for the defendant Sandler.

SPALDING, J.   The plaintiff seeks by this bill in equity to rescind the sale to the defendant Sandler (hereinafter called the defendant) of one hundred twenty-five shares of stock

in the New England Investment Corporation alleged to have been induced by the defendant's fraud and by the violation of his duty to disclose to the plaintiff material facts concerning the corporation's affairs. The judge made extensive findings of fact and ordered the bill dismissed. From a decree entered accordingly the plaintiff appealed. The evidence is reported.

Facts found by the judge and those found by us may be summarized as follows: In the spring of 1946, the plaintiff and the defendant became associated together in a finance business. In September of that year they decided to transact their business through a corporation and entered into an agreement to form the New England Investment Corporation. Under this agreement both were to be directors and officers of the corporation, and each was to hold an equal amount of its stock; profits were to be shared equally. Paragraph 4 of the agreement provided that "each party shall give to the other party full information of all transactions relating to the business of the corporation and of all letters, accounts and other writings which shall come into his hands or to his knowledge, concerning the business of the corporation. No party shall fail to divulge to any other party any information which he may have which may be conducive to the profitable operation of the corporation." Shortly thereafter the corporation was formed, of which the plaintiff and the defendant were the only stockholders, each holding one hundred twenty-five shares.

Sometime in December, 1946, the corporation purchased a storage warehouse in Somerville for $75,000, $54,000 of which was financed by bank mortgage on the property which was payable in four months. Title was taken in the name of one Binda who acted as a straw for the corporation. At the time the warehouse was acquired the National Aniline Division, Allied Chemical & Dye Corporation (hereinafter called Aniline) was a lessee under a lease which ran until January 31, 1948. The annual rental called for in the lease was $8,050, which, on the basis of floor space, amounted to twenty cents per square foot. Soon after the warehouse

was acquired by the corporation, the defendant entered into negotiations with Aniline through one Krueger, its representative, with a view to obtaining a new lease at an increased rental. All of the negotiations on behalf of the corporation concerning the renewal, except those carried on by a broker on one occasion, were conducted by the defendant. He submitted to Krueger a proposal for a ten year lease at a rental of sixty cents per square foot of floor space. Krueger stated that Aniline would not be interested in a lease at that rental but if a proposal worthy of consideration was submitted he would transmit it to Aniline with his recommendation. These negotiations "dragged along over a period of some months," during which (at least until early in March) the defendant kept the plaintiff informed as to their progress. The plaintiff thought that the rental proposed by the defendant was too high and urged him to submit a lower figure. Early in March, 1947, while the negotiations with Aniline were still in progress, the plaintiff, being dissatisfied with the volume of the finance business done by the corporation, entered into discussions with the defendant concerning the sale to him of his (the plaintiff's) interest in the corporation. "From step to step the two owners moved toward the sale of . . . [the plaintiff's] one half interest." Finally around March 19 or 20 the terms of the sale were orally agreed upon at a conference at which an attorney representing both parties was present. The necessary papers were then prepared and the actual sale took place on March 25, the defendant paying the plaintiff $15,000 for his one hundred twenty-five shares of stock in the corporation. This was $2,500 more than the plaintiff's original investment in the corporation. At that time the plaintiff executed and delivered to the defendant a general release. The "aforesaid release was intended as being inclusive of any claims arising because of the corporate relations between the two individuals." The defendant delivered to the plaintiff a similar release.

On March 27, two days after the sale, Aniline sent to the defendant an instrument signed by its vice-president, by

the terms of which it agreed to an extension of the lease for
a period of ten years at an annual rental of $16,100.   The
lessee was given an option to terminate the lease at the
expiration of five years, but if the option was exercised it
was to pay to the lessor the sum of $20,000.   This lease was
subsequently executed by Binda and is now in effect.[1]   The
rental called for in the extension is on the basis of forty
cents per square foot.   The plaintiff did not learn of the
extension until some time later.   The lease under the in-
creased rental enhanced the value of the warehouse and had
it occurred prior to the sale of the plaintiff's stock "the
value of . . . [his] one half interest [in the corporation]
would have been substantially" greater.

Shortly before the sale of the stock the negotiations with
Aniline had reached a stage which promised much more
likelihood of an agreement being reached than at any previ-
ous time.   The judge found that the defendant "did not
designedly practise any fraud" upon the plaintiff and made
no false representations to him.   He found, however, that
the defendant "did not communicate to . . . [the plaintiff]
by words or conduct any expressions of the confidence which
he entertained with respect to eventually bringing about the
extension of the lease on the basis of the increased rental to
forty cents per foot."   Finding that the plaintiff was a keen
business man of more than average experience, the judge
concluded that the weight of the evidence and the inferences
to be drawn from it established that the plaintiff, in selling
his interest in the corporation, was influenced by his per-
sonal business views which were, in substance, that there
was little likelihood that the negotiations would result in an
agreement.

If the plaintiff's case depends on proof of fraudulent repre-
sentations on the part of the defendant he cannot prevail,
for, as the judge found, there were no representations of that
sort made by the defendant.   There was, to be sure, evidence

---

[1] Binda, who held title to the warehouse as a "straw" for the corporation,
executed the lease on April 23, 1947.   A corporate vote ratifying the agreement
on behalf of Aniline was passed on May 20, 1947.

which would have supported a contrary finding, but we
cannot say that the judge was plainly wrong in finding as
he did on this issue. But that finding does not put the
plaintiff out of court. As noted above, under the agreement
of September 6, 1946, which defined the rights and obliga-
tions of the parties with respect to the corporation, each
party agreed to "give to the other party full information
of all transactions relating to the business" and to "divulge
to any other party any information which he may have
which may be conducive to the profitable operation of the
corporation."

The defendant contends that the relationship between
the plaintiff and the defendant as fellow officers, directors
and stockholders of the corporation was not of a fiduciary
nature but was the ordinary one between buyer and seller.
We cannot agree. Whatever the situation would have
been in the absence of the provision just quoted, it is plain
that under it each party owed to the other a duty of dis-
closure similar to that owed by a fiduciary in his dealings
with his beneficiary. In such dealings the fiduciary owes
the beneficiary the duty to make the fullest disclosure and
unless he does so the transaction can be set aside. *Reed* v.
*A. E. Little Co.* 256 Mass. 442, 449. *Akin* v. *Warner*, 318
Mass. 669, 675. See *Arnold* v. *Maxwell*, 223 Mass. 47,
49–50; *Howe* v. *Chmielinski*, 237 Mass. 532, 536.

The case at bar is governed by the principle just stated.
The facts here show that shortly before the sale the de-
fendant was in possession of important information touching
the progress of the negotiations and that he never revealed
it to the plaintiff. There was evidence that around March
12, 1947 (approximately two weeks before the sale of the
stock took place), the defendant had a telephone conversa-
tion with Krueger in which the former submitted an offer
for an extension of the lease on the basis of forty cents per
square foot. The principal dispute arises as to what Krueger
said concerning the proposal. The defendant testified that
Krueger merely said that he would submit it to his associates

and that he did not say that he would recommend it. Krueger, who appears to have been disinterested, testified that he told the defendant that he would recommend the forty cent figure to Aniline. We think that it is apparent that the judge adopted this version in his finding that the negotiations on the forty cent basis had reached a stage such as would "well warrant a reasonable probability" that an agreement would be reached. We also construe the findings of the judge as establishing that this phase of the negotiations was never revealed to the plaintiff. Such a finding is supported by the evidence. It was the defendant's duty, under the agreement referred to above, to disclose all information necessary to enable the plaintiff to form a sound judgment of the value of the interest that he was selling. See *Brooks* v. *Martin*, 2 Wall. 70, 85. That the plaintiff decided to sell, as the judge found, because of his personal business views, is not fatal to relief where, as here, these views were formed without information to which he was entitled.

But the defendant argues that any liability which he might be under to the plaintiff as a result of the sale was extinguished by the release which was delivered to him by the plaintiff. There is no doubt that the release, which was general, was broad enough to include the matter which is the subject of this suit. But where a release is obtained without a full disclosure of the relevant facts by one who is under a duty to reveal them, it can be set aside. *Reed* v. *A. E. Little Co.* 256 Mass. 442, 449. *Akin* v. *Warner*, 318 Mass. 669, 675. If, as we hold, the duty to disclose existed with respect to the sale of the stock, it existed no less with respect to the release which was inextricably linked to the sale. It would be strange indeed if we should hold that the plaintiff was entitled to rescind the sale of stock because of the defendant's nondisclosure but that the release which was given in conjunction with such sale was immune from attack and extinguished the right to rescind. The defendant relies heavily on the case of *Willett* v. *Herrick*, 258 Mass. 585, 596–600, but that case is not controlling here. The

release executed by the plaintiffs in that case was not obtained in violation of any duty to make a full disclosure. The parties there were dealing at arm's length (see pages 598–603).

It becomes necessary to determine what relief should be granted. The stock originally owned by the plaintiff is now owned by one Goldfine, the defendant's father-in-law, who is not a party to this suit. The judge found that "Goldfine, as title purchaser, acted in conjunction with . . . [the defendant] and for the benefit of . . . [the defendant], but that legal title vested in Goldfine." Since the defendant does not now have the legal title to the certificate sold by the plaintiff, and since Goldfine, who has such title, is not a party, those particular shares cannot be restored to the plaintiff in this suit. See *Lawrence* v. *Smith*, 201 Mass. 214, 215; *Bayer & Mingolla Construction Co. Inc.* v. *Streeter*, 318 Mass. 311, 312–313. The question is whether the plaintiff ought to be remitted to his remedy for damages or whether he should be entitled to receive the one hundred twenty-five shares of stock now in the defendant's possession. The plaintiff contends that he should be allowed the latter remedy, and we think that he should have this right. This view finds support in *Poole* v. *Camden*, 79 W. Va. 310, 314, but the contrary was decided in *Gray* v. *Trick*, 243 Mich. 388, 394. There appears to be very little authority on this point. On principle, on the facts here, the plaintiff should be given the right to obtain the defendant's shares. It merely restores to him that of which he was deprived by the fraudulent nondisclosure of the defendant, namely, a one half ownership in the corporation. That the surrender of these shares to the plaintiff may deprive the defendant of any interest in the corporation (although that is by no means certain) is an argument which does not lie in the defendant's mouth to urge in view of his conduct. Nor is it material that they are not the original shares owned by the plaintiff. If the defendant had turned over to Goldfine his own certificate and had kept that which he obtained from the plaintiff, there would be no doubt that the plaintiff could

recover it back.  He ought not to be deprived of that right because the defendant happens to hold the same number of shares in a different certificate.  See *Commissioner of Banks* v. *Chase Securities Corp.* 298 Mass. 285, 327.

It follows that the decree of the court below is reversed and a new decree is to be entered in conformity with this opinion.  The plaintiff is to have costs of this appeal.

*So ordered.*