BERNARD E. MENDELSOHN *vs.* LEATHER MANUFACTURING CORPORATION & others.

Suffolk.    December 9, 1949. — July 6, 1950.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Joint Enterprise. Fiduciary. Fraud. Sale*, Of stock, Rescission. *Release. Corporation*, Stockholder. *Evidence*, Admissions and confessions.

Members of an association which, although conducted through the medium of corporations, was a joint enterprise, were with respect to one another fiduciaries whose duty included the full and honest disclosure of all relevant facts concerning the enterprise.

A plaintiff in a suit in equity, who, after engaging with the defendant in a joint enterprise, conducted in corporate form, for the development of a certain product, sold his corporate stock to the defendant and subsequently, upon making claim on the defendant for additional money for his stock on the ground that the enterprise had proved to

be successful, effected a compromise with the defendant, received an additional sum from him and gave him a general release, could not maintain the suit to rescind the sale of the stock and the release as procured in breach of the defendant's fiduciary duty of disclosure to the plaintiff where it appeared that, whatever the situation at the time of the sale of the stock, at the time of the compromise and the giving of the release the plaintiff had full knowledge of all the relevant facts pertaining to the development of the product.

Statements in a letter written by a third person to the plaintiff in a suit concerning the writer's association with the defendant were not admissible in the suit merely because the defendant, while conferring with the writer, saw a copy of the letter and did not deny the statements.

BILL IN EQUITY, filed in the Superior Court on February 12, 1948.

The suit was heard by *Smith*, J. The plaintiff appealed from a final decree dismissing the bill.

*Z. Chafee, Jr.*, of Rhode Island, (*S. Leventall* with him,) for the plaintiff.

*E. O. Proctor*, (*H. G. Seligman* with him,) for the defendants.

SPALDING, J. To a better understanding of the objectives of this bill in equity a description of the parties and a recital of some of the facts will be helpful. The activities of the following corporations, in one way or another, are involved in this litigation: Leather Manufacturing Company (hereinafter called Company), Plastics Specialties Corporation (hereinafter called Plastics), Leather Sales Company (hereinafter called Sales), and Leather Manufacturing Corporation (hereinafter called Corporation).[1] Of these only Corporation, as a defendant, is a party to this suit. The other defendants are B. Howard Benson (hereinafter called Benson) and Edward C. Bartlett (hereinafter called Bartlett).[2]

For many years prior to the events which gave rise to this litigation the plaintiff and Benson had been friends. During that period they had had business dealings together which

---

[1] The dates of incorporation were as follows: Company, July 26, 1943; Plastics, June 16, 1944; Sales, March 7, 1945; Corporation, April 16, 1946.

[2] Jeanne Benson and Esther E. Bartlett, wife and sister respectively of Benson and Bartlett, were also named as defendants, but no relief is now sought against them and the plaintiff conceded that as to them the bill might be dismissed.

included selling securities and the development and joint ownership of certain tire patents.  Bartlett, who had made a study of leather chemistry, had spent many years in developing products compounded of leather and other materials.  He had endeavored, but without success, to develop a midsole composed of leather and rubber.  In April, 1942, Bartlett rented the first floor of a factory in Hyde Park from the plaintiff's brother for the purpose of manufacturing glue from scraps of chrome leather.  In the fall of 1942 the plaintiff, through his brother, met Bartlett.  In the spring of 1943 Benson was introduced to Bartlett by the plaintiff and the three began experiments "looking toward the production of a salable leather substitute."  From time to time Benson raised the necessary money for carrying on this work from one Arthur P. Day, a banker in Hartford, Connecticut.

On July 26, 1943, Company was incorporated for purposes which empowered it to tan, reclaim, and convert leathers, and "to manufacture . . . buy, sell and deal in every manner . . . in leather . . . soles, midsoles, [and] innersoles."  Company had three classes of stock: class A preferred, with par value of $10; class A common, without par value; and class B common, without par value.  The preferred stock had no voting rights and was preferred in liquidation to the other classes of stock.  Five hundred twenty-five shares of this class were issued to Day.  Class A common had no voting rights and was entitled to dividends "when and as declared" only after the preferred stock had been retired.  Two hundred fifty shares each were issued to the plaintiff, Benson and Bartlett.  The class B common stock had only voting rights and was the only class that had such rights.  Benson and Bartlett each held five hundred shares of this class.  Bartlett and Benson were respectively president and treasurer of Company, and the plaintiff was its clerk.  The directors were Bartlett and his sister and Benson and his wife.  The preferred stock was issued for cash and the common stock was issued for formulas, processes, and services.

Various experiments were carried on by Company through-
out the remainder of 1943 and the early part of 1944. Con-
cerning the nature of these experiments and their duration
and the extent of the plaintiff's participation in them there
is considerable dispute. But there is no dispute that at
least for several months both before and after the incorpo-
ration of Company Bartlett, together with Benson and the
plaintiff, was experimenting with methods of making a
leather substitute in sheet form of leather shavings. Down
to the spring of 1944 these experiments had not resulted in
the production of a substitute which had any commercial
value. In May of 1944 the plaintiff ceased to participate in
or to make any further contributions to the production of
such a substitute. As the judge found, he "abandoned the
idea of the successful production of a leather substitute, at
least so far as the defendants Benson and Bartlett were
concerned." Thereafter the plaintiff devoted himself ex-
clusively to another business.

On May 15, 1944, Benson and Bartlett signed the articles
of organization for Plastics, and it was incorporated on
June 16. Bartlett was its president and Benson its treasurer.
The stock in this corporation was owned by Bartlett,
Benson, Day, and one Penn. As in the case of Company,
Day supplied the finances for Plastics. Under its purposes
Plastics was empowered, among other things, to manu-
facture, sell, and deal in plastics, rubber, and animal fibre,
and to manufacture products from these materials either
alone or in combination.

On July 18, 1944, the plaintiff gave Benson an option
expiring on August 22, 1944, to purchase his stock in Com-
pany for $500. This option was never exercised and on
August 24, 1944, the plaintiff gave Benson another option
expiring on October 15, 1944, to purchase his stock at the
same price. On October 2, 1944, Benson called at the
plaintiff's house and after some discussion the plaintiff
sold his stock in Company for $125. As to this there is no
dispute, but the testimony of the plaintiff and Benson was
in conflict as to who brought up the question of the sale

and what was said concerning Company's affairs. On October 5, three days later, a meeting of the directors of Company was held at which, after a statement had been made by the president (Bartlett) that experiments could not be continued due to lack of funds and materials, it was voted to discontinue the business. On January 30, 1945, a joint meeting of the directors and stockholders of Company was held and it was voted to dissolve it and to transfer its assets to Day as consideration for the surrender and cancellation of his preferred stock. On December 19, 1945, Company was dissolved by a decree of this court.

After Plastics was formed the experimental and development work in which Benson and Bartlett were engaged was carried on by that corporation. This continued down to April, 1946, when Corporation was formed. The purposes of Corporation were very broad and permitted it to do all that Company and Plastics were authorized to do. A few days after Corporation was formed, Plastics, pursuant to a vote of its stockholders, transferred all of its assets to Corporation in exchange for stock in the latter. By this exchange the stockholders of Plastics received equivalent stock interests in Corporation. Shortly after Corporation was organized Bartlett and Benson were elected president and treasurer respectively. Plastics thereafter did no business and was dissolved by a decree of this court on May 28, 1947.

Concerning Sales a word or two will suffice. Benson and Bartlett caused it to be incorporated on March 7, 1945, to act as a selling agency for Plastics. No stock appears to have been issued by it and its activities in so far as they relate to the issues here involved are of little or no consequence.

At some time during the spring or early summer of 1944 Benson and Bartlett began experiments with a view to producing a midsole made from leather shavings and rubber.[1]

---

[1] The judge makes no findings as to when these experiments began and it is impossible for us on the evidence to make more definite findings on this issue than those stated above. There had been prior experiments with leather and rubber but these had not proved successful.

Eventually a midsole called Leathertite was developed which, the judge found, had "a salable value." It is not disputed that for a considerable period prior to the hearing below in 1948 Leathertite had passed well beyond the experimental stage and was being produced and sold in substantial amounts.

On March 24, 1945, Benson received from the plaintiff a general release. The testimony relating to the execution of this instrument was conflicting. With respect to it the judge made, as he could have on the evidence, the following findings. "Sometime in the early spring of 1945, Mendelsohn consulted an attorney, one Seligman whom he knew had been attorney for Benson and likewise a friend of Benson, threatening suit against . . . Benson. At this time he had apparently learned of the successful prosecution of the business by the Leather Manufacturing Corporation [1] [*sic*] and he stated to said attorney that he thought, in substance, that Benson and Bartlett were making money and that he ought to receive some of it. After negotiations conducted by Attorney Seligman, a compromise was effected whereby . . . [the plaintiff] was paid $300 on the 24th day of March, 1945, and in consideration thereof . . . gave a good and sufficient legal release to Benson of all demands, legal or equitable."

The facts recited above are based on findings made by the judge and those made by us either from documentary evidence or from testimony as to which there is little or no dispute.

In this suit the plaintiff seeks to set aside the release and to rescind the sale of his stock in Company on the ground that they were induced by fraud on the part of the individual defendants. The bill alleges that, as part of the fraudulent scheme entered into by these defendants and for the purpose of concealing their activities from the plaintiff and to make it difficult for him to obtain redress, they caused Company to be dissolved and organized successively Plastics, Sales,

---

[1] The judge undoubtedly meant Plastics because Corporation was not formed until more than a year later.

and Corporation to carry on the business formerly conducted by Company, and asks that the plaintiff be given an interest in Corporation equivalent to his former interest in Company. The bill further asks that the individual defendants be ordered to pay to the plaintiff one third of the dividends and profits received by them from the various corporations. By an amendment to the bill the plaintiff alleges that Benson and Bartlett misappropriated a large part of the funds of Company and Plastics and asks that they be ordered to restore these sums to Corporation.

With respect to the acquisition of the plaintiff's stock by Benson, the judge found that it "was a valid transaction and that in it . . . [the plaintiff] was not defrauded or induced to part with his stock by any fraud or misrepresentation of any kind, type or nature on behalf of . . . Benson or . . . Bartlett." The judge also found that "there was no fraud or misrepresentation of any kind perpetrated upon . . . [the plaintiff] at the time he executed the release and that it was a voluntary act on his part, which he, as an experienced business man, familiar with instruments of this kind, fully understood." Concerning the dissolution of Company and Plastics the judge found that they "were not consummated with an intent to defraud the plaintiff . . . and that no act or misrepresentation of either of the defendants was fraudulently done or made." The judge ordered that the plaintiff's bill be dismissed and from a decree entered accordingly the plaintiff appealed. The evidence is reported.

The plaintiff's position is, in substance, this: The plaintiff, Benson, and Bartlett formed a joint venture for the development of a substitute for leather suitable for midsoles, and created Company for the purpose of carrying out the venture. As members of the joint venture and in other capacities the relationship of the parties was of a fiduciary nature and each member owed to the others a duty of loyalty and full disclosure which continued throughout their dealings with each other. This duty, which existed when Benson purchased the plaintiff's stock in Company and at the

time the release was obtained, was violated both by affirmative fraudulent representations and by failure to disclose material facts. The findings of the judge relating to the transfer of the stock and the release were plainly wrong. Thus, it is argued, the release should be set aside and rescission should be granted with respect to the sale of stock and the plaintiff should be given an equal share in the subsequently acquired profits and benefits of the joint enterprise.

Although the judge made no express findings touching the nature of the association formed by the plaintiff, Bartlett, and Benson, we think those that he did make together with the evidence established that it constituted a joint adventure. The exact nature of this relationship has never been precisely defined in our decisions and we make no attempt to do so now. For present purposes it is sufficient to state that it resembles a partnership and has many of its attributes. *Edgerly* v. *Equitable Life Assurance Society*, 287 Mass. 238, 243. *Berwin* v. *Cable*, 313 Mass. 431, 434–435. See *Simpson* v. *Richmond Worsted Spinning Co.* 128 Maine, 22, 29–31. That the parties later saw fit to carry out their purposes through the medium of a corporation did not change the essential nature of the relationship. *Arnold* v. *Maxwell*, 223 Mass. 47, 49–50. *Berwin* v. *Cable*, 313 Mass. 431, 434. While the enterprise continues, joint adventurers, like partners, owe to one another the utmost good faith and loyalty. *Arnold* v. *Maxwell*, 223 Mass. 47, 49–50. *Meinhard* v. *Salmon*, 249 N. Y. 458, 463–464. *Simpson* v. *Richmond Worsted Spinning Co.* 128 Maine, 22, 31. Included in this obligation is the duty to make to each other a full and honest disclosure concerning all matters relating to the enterprise. Although contending that this duty was at no time violated by them, the defendants argue that at the time of the sale of the stock the plaintiff had abandoned the venture. That contention is not without support in the evidence, but the judge's findings on this point leave the matter in some doubt and we prefer to resolve this doubt in the plaintiff's favor. We, therefore, assume that at the

time the plaintiff sold his stock to Benson he had not withdrawn from the joint adventure, and pass on to the question whether the judge was plainly wrong in finding that this transaction and that relating to the release were valid.

The conclusions of the judge could rest on the following evidence. From August or September, 1943, to June, 1944, Bartlett and Benson were experimenting with wool, glue and plastics. In June of 1944 Bartlett conceived the idea of developing a midsole as a result of a conversation with one Crafts. Crafts at that time showed Bartlett a sample of midsole material and asked him if he could improve on it and Bartlett said that he could. Thereafter experiments were commenced and these continued throughout the summer. In the course of these experiments a midsole material was developed called Leathertite. On September 13, 1944, two hundred sixty square feet of this material, at a price of $58, was sold to a large shoe manufacturer in Brockton. Prior to this shipment the manufacturer had been experimenting with samples of it. Other shipments in small amounts were made to this manufacturer during the fall of 1944 and winter of 1945. In February, 1945, another shoe manufacturer to whom the product had been shipped complained about it and said it was "far from uniform" and that if it was not corrected "we will not be able to continue to cut the material." Benson testified that the experimentation continued throughout 1945 and that it was not until the latter part of the year that a "really . . . good result" was obtained.

No attempt will be made to summarize the voluminous evidence in the case, much of which was sharply conflicting. It is enough for present purposes to state that the judge could have found that the sale of the stock was suggested by the plaintiff, and that it was not induced by fraudulent representations on the part of Benson. The mere absence of affirmative false representations, of course, would not preclude the plaintiff from impeaching the transaction. By reason of the fiduciary relationship existing between the parties Benson could be guilty of fraud by failing to disclose

to the plaintiff relevant facts concerning the operations of the enterprise. *Arnold* v. *Maxwell,* 223 Mass. 47, 49–50. *Flynn* v. *Colbert,* 251 Mass. 489, 492–493. *Reed* v. *A. E. Little Co.* 256 Mass. 442, 449. *Akin* v. *Warner,* 318 Mass. 669, 675. *Sher* v. *Sandler,* 325 Mass. 348, 353–355. The judge could have found that when the sale of the stock took place the development of the midsole was still in the experimental stage and that nothing had occurred up to that time which afforded any substantial basis for belief that it would be a commercial success. It is true that Benson did not reveal to the plaintiff the progress that had been made in the experiments or the fact that in the previous month a small quantity of Leathertite had been sold to the shoe manufacturer in Brockton.

We need not decide what the result would be if the transactions between the parties ended with the sale of the stock on October 2, 1944. As stated above, they did not end there. The release of March 24, 1945, must also be taken into consideration. The judge found that it was not obtained by "fraud or misrepresentation of any kind." Support for this conclusion may be found in the following evidence: The plaintiff approached Benson in December, 1944, and said, "you are making money now, and part of that should be my business." Benson testified that between December and March the plaintiff visited the factory a half a dozen times and "saw us make it." On those occasions the plaintiff told Benson that "he should get something from this company." On March 23, 1945, the plaintiff called to see Mr. Seligman, Benson's attorney, and told him that Benson was "making a good thing out of that leather business" and that he (the plaintiff) "ought to get some money." After mentioning various sums, the plaintiff told Mr. Seligman that he wanted $300 more for the stock he had sold to Benson. Following a telephone conversation with his client Benson, Mr. Seligman informed the plaintiff that Benson would pay him $300, and that the money and the papers would be ready on the following day. On that day the plaintiff called at Mr. Seligman's office

and executed a general release for which he received the sum of $300.[1]

.. At the time of the execution of the release and the instrument described in the footnote it could have been found that the plaintiff had knowledge of all the relevant facts pertaining to the development of Leathertite. He was willing to execute a release on the basis that the company had succeeded in developing a midsole and was making money. In these circumstances it is difficult to see how Benson was under a duty to reveal anything more to him. On Benson's version of what had occurred there was nothing more to disclose. Indeed, according to Benson's testimony Leathertite was still in the experimental stage. In *Durfee* v. *Durfee & Canning, Inc.* 323 Mass. 187, 203, on which the plaintiff relies, the plaintiff had no more than a suspicion that there had been a breach of trust at the time of his alleged ratification of the acts of the defendant. Thus, whatever may have been the situation at the time the stock was transferred, the plaintiff under a threat of suit and with knowledge of the relevant facts saw fit to demand and receive $300 more for his stock in exchange for the instruments described above. We think that these instruments put an end for all time to his rights in the joint adventure and in the corporations organized to carry it out. This is not a case where the release was obtained from one in violation of a duty of trust and confidence. Compare *Akin* v. *Warner*, 318 Mass. 669, 675; *Sher* v. *Sandler*, 325 Mass. 348, 353–354. In summarizing portions of the evidence supporting the foregoing conclusions we have not overlooked the fact that there was evidence which would have supported different findings. But such findings were not required. Although there was a considerable amount of documentary

---

[1] At the same time the plaintiff executed an instrument under seal which recited that he had received from Benson the sum of $300 "being the balance due me from said Benson for the sale and transfer to him of two hundred fifty (250) shares of Leather Manufacturing Company stock, heretofore transferred to said Benson, and in full payment and satisfaction for said stock and for all my right, title and interest in and to said Leather Manufacturing Company, and to any distributive share of the assets of said Company which I may be entitled to upon its dissolution or liquidation."

evidence, most of the evidence on the crucial issues in the
case was oral. "When this court is asked on appeal with
full report of all the evidence to revise the findings of the
trial judge, it is 'only in a very clear and exceptional case
that this can be done, when the court of first instance has
seen and heard the witnesses.'" *Spiegel* v. *Beacon Partici-
pations, Inc.* 297 Mass. 398, 407–408. *Boston* v. *Santosuosso,*
307 Mass. 302, 331–332. The record here does not present
such a "clear and exceptional case." We are of opinion
that the findings of the judge were supported by the evi-
dence and were not plainly wrong.

Under the amendment to the bill the plaintiff introduced
evidence to show that Benson and Bartlett misappropriated
funds belonging to Company and Plastics and asked that
they restore these sums to Corporation. The judge made
no findings touching this issue (except to the extent that
they may be implied in his conclusion that no fraud was
practised on the plaintiff with respect to the sale of stock
and the release) and we are in no position to make any on
this record. But that is of no consequence. It is settled
in this Commonwealth that the rights of a stockholder in
such a situation are derivative and that his remedy must be
through a minority stockholders' suit brought on behalf of
the corporation. *Smith* v. *Hurd,* 12 Met. 371. *Bartlett* v.
*New York, New Haven & Hartford Railroad,* 221 Mass. 530.
*Hayden* v. *Perfection Cooler Co.* 227 Mass. 589, 591. *Shaw*
v. *Harding,* 306 Mass. 441, 448. *Andersen* v. *Albert &*
*J. M. Anderson Manuf. Co.* 325 Mass. 343, 345–346. The
present bill is not of that sort and the relief which the
plaintiff seeks could not be had under it. *Bacon* v. *Bacon,*
266 Mass. 462, 474. Compare *Spiegel* v. *Beacon Partici-
pations, Inc.* 297 Mass. 398, 434. However, a more funda-
mental objection to such relief is the fact that the plaintiff
ceased to be a stockholder of Company and has shown no
right in equity to be treated as such. As above stated, his
rights with respect to Company and the succeeding corpo-
rations have terminated.

During the hearing the plaintiff sought to introduce in

evidence a letter, written by Day to the plaintiff, containing certain statements relative to Day's association with Benson and Company. The letter was excluded subject to the plaintiff's exception. The plaintiff offered to prove that sometime after the present controversy arose Benson saw a copy of the letter while conferring with Day; that he did not deny these statements; and that he asked Day not to harm him. The plaintiff urged its admissibility on the ground that Benson's failure to deny the statements amounted to an admission. It is not open to the plaintiff to support its admissibility here on other grounds and we shall confine our discussion to the ground originally urged. *Rothwell* v. *First National Bank,* 286 Mass. 417, 422, and cases cited. Wigmore on Evidence (3d ed.) § 17. There are instances where the failure of one to deny a statement adversely affecting his rights may constitute an admission provided the statement is of such a nature and is made in such circumstances as to call for a reply. *Warner* v. *Fuller,* 245 Mass. 520, 528, and cases cited. But in the circumstances disclosed here we are of opinion that the failure of Benson to deny the statements did not constitute an admission. The statements were not directed to him. They were merely something contained in a letter to the plaintiff that Benson saw while conferring with Day for the purpose of obtaining certain information touching the present litigation. They were not of such a nature or made in such circumstances as to naturally call for a denial. *Commonwealth* v. *Boris,* 317 Mass. 309, 317. In that case it was said that the doctrine of implied admission by silence should be "applied with caution" (page 317). Benson's request to Day not to harm him, of course, was an admission (see *Hastings* v. *Stetson,* 130 Mass. 76, 77), but this got into evidence through Day's deposition and the plaintiff had the benefit of it. The letter was not needed to make this statement intelligible. The exclusion of the letter reveals no prejudicial error.

*Decree affirmed with costs.*