Bernard J. McKeon, administrator, *vs.* Northeast
Service Corporation & another.

Worcester.    March 10, 1960. — April 28, 1960.

Present: Wilkins, C.J., Spalding, Williams, Counihan, & Cutter, JJ.

*Practice, Civil,* Charge to jury; Exceptions: whether error harmful.
    *Damages,* For death.  *Error,* Whether error harmful.  *Words,* "Degree
    of culpability."

At the trial of an action under G. L. c. 229, § 2C, to recover for the death
    of a child struck by a motor truck operated by the defendant, where
    there was evidence that he had fallen asleep at the wheel, there was
    no error prejudicial to him in portions of the charge in which the judge
    discussed gross negligence in connection with his "degree of culpability"
    if he were found to be negligent.

Tort.    Writ in the Central District Court of Worcester
dated March 4, 1958.

Upon removal to the Superior Court the action was tried
before *Constantino,* J., a District Court judge sitting under
statutory authority.

*Stanley B. Milton,* for the defendants.

*John L. Lyman,* (*Edmond M. Trespace* with him,) for the
plaintiff.

Spalding, J.    On June 17, 1957, James B. McKeon, a
small child, was killed by a truck owned by Northeast Serv-
ice Corporation (Northeast) and operated by its employee,
Albert J. Provencher.    This action of tort for death was
brought by the child's administrator against Northeast and
Provencher.    The sole question is whether certain state-
ments in the charge concerning the law of gross negligence
were prejudicial to the defendants.

There was evidence of the following.    The accident oc-
curred around 11 a.m. on a hot day in a section of West
Warren designated by a sign as "Thickly settled."    A
police officer testified that Provencher, the driver of the

truck, admitted that just prior to the accident he "dozed off and . . . struck the curb and . . . came to"; that he tried to come back to the road but struck a hydrant; and that he looked in the mirror and "saw the child lying on the sidewalk." The distance from the place where the truck went off the road to where it came back to the road was seventy-six feet. Another witness testified that Provencher admitted that the drone of the engine, the sun in his face, and the heat made him feel drowsy, and that he "felt he could probably make the diner," which he had visited on previous trips, to obtain a cup of coffee which would "straighten him up." In response to a question by the judge, Provencher stated that "he was aware of being sleepy and tired when he was coming down the hill . . . into the town."

The portions of the charge objected to were as follows: "Was there a falling asleep at the wheel, or was there a loss of consciousness? If so, was there, in connection with that, some element on which you would base negligence on the part of the defendant for having done so? Falling asleep at the wheel would be evidence of negligence for you to consider in determining whether you would find the defendant negligent, and in some cases, depending on what the circumstances are, it would be evidence of . . . gross negligence." The judge then read excerpts from the opinions in *Carvalho* v. *Oliveria*, 305 Mass. 304, and *Flynn* v. *Hurley*, 332 Mass. 182, discussing the circumstances in which falling asleep at the wheel might warrant a finding of gross negligence. Following these quotations the judge continued, "It's for you to say what the situation was and whether there was a situation here whereby you can say Mr. Provencher . . . was forewarned about the danger of sleep and succumbed to it nonetheless, in which case you could even go further than negligence and go into the matter of gross negligence, bringing into play the range of culpability to be considered, if you find liability, in the element of damages." The judge then concluded this portion of his charge by reading the definition of gross negligence set forth in *Altman* v. *Aronson*, 231 Mass. 588, 591–592.

At the conclusion of the charge, the defendants' counsel excepted to the portions of it recited above which discussed gross negligence, quoted from court decisions, and "combined culpability and gross negligence."

This action was founded on G. L. c. 229, § 2C, where, to recover, the plaintiff need prove only ordinary negligence. The defendants argue that in these circumstances it was error for the judge to discuss the subject of gross negligence in his charge. From a reading of the entire charge, we think that the judge made it clear that the issue on the matter of liability was ordinary negligence. Three times in his charge, prior to the references to gross negligence, the judge stated that in order to recover it was essential for the plaintiff to prove negligence on the part of the defendants, and a definition of negligence was given. And twice, following the portions objected to, the judge told the jury that negligence must be found if they were to hold the defendants liable. It is highly unlikely that the jury could have thought that gross negligence was in issue on the subject of liability. But even if they did, the plaintiff, and not the defendants, would have cause to complain.

The defendants argue further that the references to gross negligence, even if considered by the jury only on the issue of culpability, were likewise prejudicial. Under G. L. c. 229, § 2C, one who is liable for the death of a person must respond in "damages . . . of not less than two thousand nor more than twenty thousand dollars, to be assessed with reference to the degree of his culpability." The judge might have concluded that a discussion of gross negligence would be helpful on this issue. The words "degree of culpability," without some amplification or explanation, do not furnish much of a guide. We think that it would have been the wiser course not to have discussed the issue of gross negligence to the extent that the judge did. But we cannot say that the substantial rights of the defendants were injuriously affected. See G. L. c. 231, § 132.

*Exceptions overruled.*