EDWARD F. GISHEN *vs.* DURA CORPORATION.

Suffolk. April 5, 1972. — June 20, 1972.

Present: TAURO, C.J., SPIEGEL, REARDON, BRAUCHER, & HENNESSEY, JJ.

*Evidence,* Admitted without objection, Opinion, Extrinsic affecting writing. *Practice, Civil,* Waiver, Admission of facts. *Contract,* Modification, Consideration, Of employment. *Fiduciary. Deceit. Waiver.*

Where evidence was admitted without objection, a motion to strike presented the following day was untimely and there was no error in denying it. [181]

Where the plaintiff salesman entered into a printed contract with the defendant corporation whereby he was to have a 35% commission on a certain order and this figure was superseded by a hand-written amendment dated ten days later, it was not error to permit the plaintiff to explain a later communication from the defendant to the effect that the order in question was to be handled according to the "original agreement"; the plaintiff's explanation, based on a conversation with the defendant's sales manager, was admissible to give meaning to the defendant's ambiguous communication. [181–182]

A party which introduced evidence on the same subject matter as other evidence to which it had previously objected when offered by the opposite party thereby waived the objection. [182]

A party which admitted, pursuant to a notice to admit facts under G. L. c. 231, § 69, that a contract was modified on a certain date was bound by that admission and could no longer contend that the modification was ineffective. [183]

Where a fiduciary relationship existed between a salesman and a corporation, it was incumbent on the corporation to disclose to the salesmen all the material facts relating to the establishment of the amount of his commissions [183–185]; the salesman could not waive his right to receive information, the existence of which was unknown to him and which the corporation, by reason of the fiduciary relationship, had a duty to reveal [185].

A promise by a salesman to assume a debt owed by a corporation of which he had previously been an officer was without consideration and was not enforceable. [185–186]

CONTRACT. Writ in the Superior Court dated September 28, 1967.

The action was tried before *Ponte*, J.

*Allan van Gestel (Kenneth A. Cohen* with him) for the defendant.

*John D. Dwyer* for the plaintiff.

BRAUCHER, J. The plaintiff Gishen brought this action of contract to recover his commission on a $708,000 sale to Radio Corporation of America (RCA) of 100 "Mach 10" type computer terminals designed for use in the program of the division of employment security of the Commonwealth. There was a jury verdict for Gishen in the sum of $82,458.84. The case is here on the defendant's exceptions to the judge's rulings on evidence and to his instructions to the jury and his refusal to give requested instructions. Other exceptions were not argued and are therefore waived. Our task has been made more difficult by the defendant's confusing and repetitive presentation, which the plaintiff followed while protesting that he "would have preferred . . . a different — and perhaps more logical — order."

The evidence consisted in large part of documents, the authenticity of which was not in issue, supplemented by the testimony of Gishen, admissions and answers to interrogatories by the defendant Dura Corporation (Dura), and the deposition of Surface, the general manager of Dura's business machines division from August, 1965, to April, 1967. We summarize that part of the evidence which is not in substantial dispute.

Gishen was a seasoned salesman. From February, 1964, until May, 1965, he was president and seventy-five per cent owner of Dura Business Machines of New England, Inc. (DBMNE), a corporation which sold Dura products under an agency agreement. In the spring of 1965, DBMNE could not meet its payroll or pay its bills, and in May, 1965, Gishen became the manager of Dura's Boston branch. The assets of DBMNE were transferred to Dura, and DBMNE became a shell. During July and August, Gishen as an officer of DBMNE signed two notes for a total of $34,472.25 representing DBMNE's debt to Dura. He refused to sign the notes in his individual capacity.

Gishen's employment as branch manager was the subject of a contract consisting of two parts, a printed part dated June 15, 1965, which was Dura's standard branch

manager'.s contract, and a handwritten amendment dated June 25, 1965. The two were executed together in August, 1965. That contract terminated on or about February 28, 1966, except for certain provisions relating to the RCA order, and on or about March 1, 1966, a new employment agreement with Gishen became effective. A "payroll notice" dated March 1, 1966, set out new rates of compensation, but provided, "NOTE: MASS. STATE ORDER TO BE HANDLED ACCORDING TO ORIGINAL AGREEMENT."

The RCA order was dated April 7, 1966. On May 2, 1966, Surface wrote to Gishen that commissions on the RCA order to the Boston office, based on $1,330.50 per unit, would amount to more than $137,000, and would "give you approximately $10,000.00 extra in personal income." Gishen wrote back stating that he realized that the commission figures "are based on a net sales figure after engineering costs and discounts are applied." He then set out a computation based on Surface's $137,000 figure and showing a "[f]inal [n]et" over $52,000, and asked for clarification.

Surface's figures were not in fact based on "a net sales figure." They were instead based on a "list price," and a price reduction to RCA and engineering and other costs were subtracted directly from a "base commission" computed at thirty-five per cent of "list price." If the commission per unit had been computed at thirty-five per cent of the "net sales figures," it would have come to more than $2,200 instead of $1,330.50. Pursuant to the standard branch manager's contract, the books of the Boston branch, including the records from which commissions were calculated, were kept at the Dura plant in Detroit. No copy of the RCA order was made available to Gishen.

On May 16, 1966, in response to Gishen's request for clarification, Dura's controller wrote him "to detail the commission arithmetic" on the RCA order. He did not correct Gishen's erroneous assumption that the commission figures were based on "a net sales figure," but set out deductions from the "[f]inal [n]et" computed by

Gishen to arrive at a cash "total to manager" of $10,919. This figure included "service income" which Surface later testified was only due if Gishen remained in Dura's employ until the equipment was installed. Gishen replied that the breakdown was "appreciated and accepted." In August, 1966, Dura lent Gishen $5,000 to be repaid out of the RCA commission or any other commission he might receive.

On December 28, 1966, Gishen was fired. At that time he requested payment of Dura's outstanding obligation to him. Dura's general manager promised payment within a week, but none was made. The machines were not finally delivered and billed for until February 29, 1968. The jury determined, for interest purposes, that the date of the breach of Dura's contract with Gishen was March 30, 1968. No commission payments due to the plaintiff on the order were ever made.

Gishen contended that the RCA order was to be handled according to the "original agreement," meaning the printed terms of the standard branch manager's contract dated June 15, 1965, and that the May, 1966, correspondence showed the proper method of computation of the amount of commission except for items not disclosed to him and except for certain corrections. Dura contended that the handwritten terms of the August, 1965, contract were applicable, and that under these terms Gishen was not entitled to any commission. Alternatively, Dura relied on testimony by Surface, contradicted by Gishen, that before the RCA order was obtained Gishen agreed to offset against his commisison any price reduction given RCA from a quoted price and all special engineering costs, and agreed that "service commissions" would go to the Boston office rather than to Gishen personally. Dura also contended that the correspondence of May, 1966, bound Gishen to the commission figure computed by Dura. Gishen contended that any agreement made in the May correspondence could be avoided because Dura failed to disclose material facts, or because the agreement was conditioned on his employment by Dura until

the machines were installed, as otherwise he would not be entitled to the "service income" included in the amount due him by Dura's letter of May 16. These issues, and others described below, were submitted to the jury.

1. Gishen testified that after he was fired and had demanded payment of his commission, he was referred to Bennett, "the new Walter Kidde general manager who was taking over all the activities of Dura," and that Bennett said, "We will get this right out for you." When nothing was received, Gishen testified, he called again and Bennett "flatly told me that they were not going to pay it and they didn't become a billion dollar corporation by paying people." No objection or motion to strike was made by Dura at the time of admission of this evidence, but the next morning Dura made a motion to strike. The motion was untimely. S. J. C. Rule 2:43, 351 Mass. 767. *Clark-Rice Corp.* v. *Waltham Bleachery & Dye Works,* 267 Mass. 402, 411. *Leonardi* v. *Peabody,* 351 Mass. 706, and cases cited. *Grant* v. *Golden,* 360 Mass. 849. We do not pass on Gishen's contentions that Dura's reason for refusing payment was relevant to several issues in the case and that the judge's charge guarded against unfair use of this evidence.

2. Dura argues that it was error to allow Gishen to testify to what he thought the phrase "original agreement" in the payroll notice of March 1, 1966, referred. Dura concedes that such testimony could be admissible for the limited purpose of explaining the contract's meaning, but maintains that the testimony, as admitted, constituted an improper opinion by Gishen as to a matter of law contrary to the rule in *S. D. Shaw & Sons, Inc.* v. *Joseph Rugo, Inc.* 343 Mass. 635, 639. There was no error. The payroll notice embodied an admitted modification of the August, 1965, contract. The notice emanated from Dura, it was not an integrated agreement, and it was entirely ambiguous in its reference to the "original agreement." Gishen testified that on the basis of a conversation with Dura's sales manager he understood that he was to get the thirty-five per cent commis-

sion on the RCA order. The thirty-five per cent commission was provided for in the printed agreement dated June 15, 1965, but was negated by the handwritten addition of June 25, 1965. Gishen's testimony amounted to no more than an attempt to reconstruct the substance of his conversation with Dura's sales manager, and was admissible to give meaning to Dura's ambiguous communication. *Globe Ticket Co. of New England* v. *Boston Retail Grocers' Assn.* 290 Mass. 235, 238. *Imper Realty Corp.* v. *Riss,* 358 Mass. 529, 534–535. *Bridgewater Washed Sand & Stone Co. Inc.* v. *Bridgewater Materials, Inc.* 361 Mass. 809, 812–813. See Restatement 2d: Contracts (Tent. Draft No. 5, March 31, 1970), §§ 227, 232.

Dura makes a similar argument with respect to testimony by Gishen that the Boston branch was "entitled" to a commission on the RCA order, with respect to deposition testimony of Surface on cross-examination that Gishen was "entitled" to his commission, and with respect to Surface's deposition testimony as to the details of proper calculation of the commission. This testimony was useful in enabling the judge and jury to apply the agreement to its subject matter and "to understand the subject matter of the agreement as it lay in the minds of the parties." *Rizzo* v. *Cunningham,* 303 Mass. 16, 21. We do not consider Dura's objections further, since Dura itself introduced deposition testimony of Surface on direct examination that "Mr. Gishen was entitled to participate in the commissions on the RCA order." This was a waiver of the objections. *Ryder* v. *Board of Health of Lexington,* 273 Mass. 177, 179–180. *Newton Constr. Co.* v. *West & South Water Supply Dist. of Acton,* 326 Mass. 171, 175. *Davis* v. *Hotels Statler Co. Inc.* 327 Mass. 28, 29–30. See Hughes, Evidence § 207, pp. 222–223.

3. Dura contends that the judge charged the jury as to modifications of the contract between the parties without adequately instructing them that such modifications required mutual assent and consideration and without adequately instructing them about the plaintiff's burden

of proof in establishing his claim. Dura's arguments as to burden of proof are totally without merit. The charge was, in this respect, painstakingly adequate.

There was also no error in the instructions as to the requirements of consideration and mutual assent. Dura did not contest the validity of the contract executed in August, 1965. Dura admitted, pursuant to a notice to admit facts under G. L. c. 231, § 69, that a modification of that contract had occurred "on or about February 28, 1966." It is bound by this admission and therefore its claim that this modification was ineffective is without merit. G. L. c. 231, § 69. *Krinsky* v. *Pilgrim Trust Co.* 337 Mass. 401, 407–408. *Waldor Realty Corp.* v. *Planning Bd. of Westborough*, 354 Mass. 639, 640. See *Roberts* v. *Eastland Food Prod. Co. Inc.* 323 Mass. 466, 471. Moreover, as matter of law, there were both consideration and assent for the February modification in Gishen's continuing to work for Dura, with its knowledge and approval, at considerably lower commission rates. See *Hanson & Parker, Ltd.* v. *Wittenberg*, 205 Mass. 319, 326–327; *Blood* v. *Dewey*, 315 Mass. 500, 502; *F. A. Bartlett Tree Expert Co.* v. *Barrington*, 353 Mass. 585, 587–588.

The letters exchanged in May, 1966, discuss how to calculate the commission due under the February modification and amount to admissions by the parties as to its many unclear terms. They do not, however, purport to modify the contract further nor does Gishen's claim rest on such a modification. Dura agrees that such a modification was "doubtful, as a matter of law," but maintains that, if a May modification occurred, it could be found that Gishen agreed to be bound by the commission figure computed by Dura. Charging the jury that they could find a May modification favored Dura, and absence of instruction as to the requirement of consideration could not have caused Dura harm. G. L. c. 231, § 132. See *Bond Pharmacy, Inc.* v. *Cambridge*, 338 Mass. 488, 492; *McKeon* v. *Northeast Serv. Corp.* 340 Mass. 724, 726.

4. In submitting to the jury Dura's claim that the May

letters constituted a settlement binding Gishen to its commission figures, the judge stated that the relationship of the parties was a fiduciary one and that a failure by Dura to disclose material facts could make such a settlement voidable by Gishen. Dura contends that this charge was erroneous. It also claims that it was error not to charge that Gishen could have waived his right to undisclosed information even if a fiduciary relationship did exist.

There was no error. All the books required to compute the commission were kept by Dura in Detroit and were unavailable to Gishen. Dura undertook to make disclosure of the correct figures in its May letters, and Gishen was entitled to trust it in arriving at any settlement. *Reed* v. *A. E. Little Co.* 256 Mass. 442, 449–450. *Sher* v. *Sandler*, 325 Mass. 348, 353. *Broomfield* v. *Kosow*, 349 Mass. 749, 755–756. See *Stetson* v. *French*, 321 Mass. 195, 198–200; *Warsofsky* v. *Sherman*, 326 Mass. 290, 292–293; *Fitzgerald* v. *Cleveland Cadillac Co.* 17 Ohio App. 12, 17; *Bonnell* v. *B. & T. Metals Co.* 81 N. E. 2d 730, 731–732 (Ohio Ct. App.) ; *Smyth Sales* v. *Petroleum Heat & Power Co.* 128 F. 2d 697, 700–701 (3d Cir.) ; *Burns* v. *Massachusetts Inst. of Technology*, 394 F. 2d 416, 419 (1st Cir.).

Even if the parties had been dealing at arm's length and Gishen had in no way been prevented from acquiring the relevant information, the fact of Dura's disclosure bound it "to speak honestly and to divulge all the material facts . . . ." *Kannavos* v. *Annino*, 356 Mass. 42, 47–49, quoting Harper & James, Torts, § 7.14. See *Maxwell* v. *Ratcliffe*, 356 Mass. 560, 562–563. Compare *Windram Mfg. Co.* v. *Boston Blacking Co.* 239 Mass. 123, 126; *Swinton* v. *Whitinsville Sav. Bank*, 311 Mass. 677, 678. Any violation by Dura of this duty would make a settlement voidable by Gishen. See *Boston Five Cents Sav. Bank* v. *Brooks*, 309 Mass. 52, 55–56, and cases cited; *Sher* v. *Sandler*, 325 Mass. 348, 353; *Kannavos* v. *Annino, supra,* at 50. This is particularly true where Dura knew that any agreement by Gishen was made in

reliance on its disclosure and that he was acting under an erroneous assumption. See *Broomfield* v. *Kosow,* 349 Mass. 749, 755; *Kannavos* v. *Annino, supra,* at 49; Restatement: Contract, § 472 (1) (b).

Dura requested the judge to instruct that Gishen could be found to have waived his right to a commission. It never presented the argument now raised that Gishen waived his right to a full disclosure of information. It cannot do so now. *Commonwealth* v. *Freeman,* 352 Mass. 556, 563–564. *Commonwealth* v. *Underwood,* 358 Mass. 506, 510–511.

The argument also fails on the merits. A party cannot "waive" information with respect to an error in calculation whose existence is unknown to him, particularly where his ignorance is caused by the very lack of disclosure in question and where the parties are not fully at arm's length. See *Reed* v. *A. E. Little Co.* 256 Mass. 442, 449; *Allen* v. *Moushegian,* 320 Mass. 746, 757; *Sher* v. *Sandler,* 325 Mass. 348, 354–355. Compare *Arnold* v. *Maxwell,* 223 Mass. 47, 51; *Naukeag Inn, Inc.* v. *Rideout,* 351 Mass. 353, 356–357; *Schuster* v. *Baskin,* 354 Mass. 137, 140–141.

5. The judge also charged that Gishen's "acceptance" of Dura's figures in the letter of May 20, 1966, could be found by the jury to be conditional on Gishen's continued employment by Dura, and, therefore, voidable when he was fired. That there was sufficient evidence for this charge is not now disputed by Dura. Instead, it argues that it was error to make this charge without instructing the jury that any such condition must be communicated to both parties and that there must be mutual assent. The jury were adequately instructed that any agreement between the parties had to be mutual, and there was no error.

6. In his letter of May 5, Gishen deducted from the commission due to him the $34,472.25 debt owed by DBMNE to Dura, and this deduction was also indicated by Dura's calculations in its letter of May 16. Gishen's letter of May 20 said: "I am happy to see that the old

DBM/NE debt will be erased . . . ." There was undisputed testimony by Dura's lawyer that Gishen had refused to sign the original DBMNE notes in his personal capacity, and the judge ruled that as matter of law the notes were not Gishen's personal obligations. There was evidence that Gishen considered them to be a moral, not a legal, obligation. Gishen also testified that he no longer felt a moral obligation to pay the notes after the discovery process of May, 1970, disclosed how Dura had actually calculated his commission.

Dura now argues that, if the May letters could be seen as a valid modification binding on Gishen, the jury should have been instructed that they could find he agreed to assume personal responsibility for the DBMNE debt. The judge gave, in essence, this very instruction. Dura's exception does not appear to raise the question whether Gishen could be found to have assumed the debt in the absence of a valid modification or settlement. If it had, we assume that the May letters, though voidable and avoided as a modification or a settlement, might provide a sufficient memorandum to satisfy the statute of frauds. G. L. c. 259, § 1, Second, and § 2. But such an undertaking would be gratuitous and invalid for lack of consideration. *Davis* v. *H. S. & M. W. Snyder, Inc.* 252 Mass. 29, 36, and cases cited. See *Damiano* v. *National Grange Mut. Liab. Co.* 316 Mass. 626, 629, and cases cited.

*Exceptions overruled.*